IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARIE B. PATTON,  :
as Trustee of the Thomas V. Patton  :
Insurance Trust,  :
 :
      Plaintiff,  :
 : CIVIL ACTION NO.
   v.  : 1:04-CV-0899-JOF
 :
SECURITY LIFE OF DENVER  :
INSURANCE COMPANY and  :
CAPITAL MANAGEMENT  :
SYSTEMS, INC.,  :
 :
      Defendants.  :

**OPINION AND ORDER**

This matter is before the court on Defendants' motion to compel [48-1]; Defendant Security Life's motion for summary judgment [57-1]; Defendant Capital Management System's motion for summary judgment [59-1]; Plaintiff's motion for summary judgment [60-1]; Plaintiff's motion for oral argument [62-1]; Plaintiff's motion for leave to permit ratification, or in the alternative to join co-trustees [77-1]; Plaintiff's motion for oral argument [88-1]; and Plaintiff's motion for leave to file supplemental response [90-1].

AO 72A
(Rev.8/82)

## I.      Background

### A.      Procedural History and Facts

Plaintiff, Marie B. Patton, as Trustee of the Thomas V. Patton Insurance Trust, filed suit against Defendants, CMS Companies and Security Life of Denver Insurance Company, alleging that Defendants breached their contract and breached their fiduciary duty to Plaintiff in deleting a rider from a life insurance policy.

In June 2002, Thomas V. Patton established the Thomas V. Patton Insurance Trust. Marie Patton was the sole trustee of the Patton Trust until the death of Thomas Patton, when Stanley Smith and Harvey Hill joined her as trustees. The only asset of the Patton Trust was a Security Life of Denver life insurance policy purchased at the time the trust was established. Capital Management Systems, Inc. ("CMS"), assisted the Pattons in making the insurance purchase. CMS sells investments and insurance to sophisticated investors.

When the policy was purchased, it consisted of a whole life policy with a death benefit of $1,875,000 and a scheduled term life insurance rider with a death benefit of $625,000. The whole life policy had an annual premium of $129,893. The rider was paid for by deducting from the accumulated cash value of the policy at the end of each policy year.[1] The policy anniversary date was June 21. The rider states: "Termination: This rider ends on the

---

[1]At various points, Plaintiff contends that the $129,893 premium was for the policy and the rider. However, her deposition testimony, cited in support of this assertion, states only that she was aware she paid a $129,893 premium, but does not know how the rider was paid. *See* Patton Depo., at 115-16.

2

earliest of: . . . 5. The date that you request." The policy provides that "[w]e must receive in writing any election, designation, change, assignment, or request you make. It shall be effective when we receive it at the home office during the life of the insured."

In 1999, Thomas Patton started to review his policy options because of increases in premiums due to declining interest rates. As a result of these discussions, Mr. Patton apparently made the decision to delete the rider on his life insurance policy. During these discussions, Russell Holt of CMS told Mr. Patton that if he deleted the rider, it would be effective immediately.[2]

On August 10, 2001, Mr. Holt sent to Mr. Patton a Client Service Application form to instruct and authorize Security Life to delete the rider. The letter indicated to Mr. Patton that the "paperwork was necessary to delete the term rider from the [] policy. Please have Marie, as trustee, sign where noted and return the package back to CMS." The letter also indicated that this was the first in a two-step process designed to eliminate the need for future

---

[2]Mr. Holt testified that he informed Mr. Patton that one way to not have to pay additional premiums would be to eliminate the rider. *See* Holt Depo., at 82-83. Mr. Patton stated that he wanted to think about it for a couple of days. He then called Mr. Holt back and said that they wanted to delete the rider. Mr. Holt told Mr. Patton that Marie Patton would have to authorize the deletion as trustee and that the effect of the deletion would be immediate. *Id.*

Plaintiff contests this statement and denies that anyone at CMS told Mr. Patton that it would be immediate. Plaintiff points to her own deposition testimony to support her assertion. However, Plaintiff's deposition testimony does not relate to the immediacy of the termination, but rather her surprise at learning that the rider had been deleted. Thus, Mr. Holt's testimony on this point remains undisputed.

3

premiums. The Client Service Application form attached to the letter had an "X" marked next to "term rider deletion." On the signature page, a large "X" was marked next to a line indicating "Marie B. Patton, trustee." Mr. Patton asked Plaintiff to sign the blank form and she did so. Plaintiff testified that she did not know what the form was for but that she believed it was simply to get more information and was not intended to delete the rider. Plaintiff avers that the "illustration" attached to the August 10, 2001 letter still indicated a rider of $625,000 on it.

On August 21, 2001, Mr. Patton sent the signed form back to Mr. Holt at CMS. He stated, "I am returning to you the Client Service Application signed by myself as owner and Marie B. Patton as Trustee. I leave it in your hands to fill out the balance of the form. . . . ***The purpose of this exercise is to cancel the term rider and give you my commitment to pay two additional premiums at the usual amount in 2002 and 2003. As you have assured me, this will establish the death benefit for the next two years at $1,875,000 . . . .***"[3] Mr. Holt then forwarded the signed form to Security Life.

---

[3] In her response to Security Life's statement of facts, Plaintiff contends that this letter from Thomas Patton indicated that the deletion of the rider would occur "at a future date" and that "replacement coverage [would] be put in place before the Rider was deleted." *See* Response, ¶ 12. The support Plaintiff supplies for that contention is her deposition testimony at pages 131 and 134-35. A review of those pages, however, does not relate to the statements in the letter. Rather, it is Plaintiff's speculation that her husband would not have deleted the rider without having replacement coverage in place. The court finds this testimony does not dispute the words stated by Mr. Patton in the letter.

4

On October 10, 2001, Security Life sent to "Thomas V. Patton Agreement, C/O Marie B. Patton," to her address on file with the insurance company, a letter confirming the deletion of the rider. "Your request to delete the Term Rider on this policy has been processed. Enclosed please find an endorsed copy of the client service application." The copy enclosed contains a notation above Mr. Patton's signature of "9-4-01." It lists an effective date of "6/21/01." Under its policy concerning termination of riders, because the termination was requested more than two months prior to the next anniversary of the policy, Security Life backdated the termination to be effective on the previous anniversary date. Plaintiff testified that she cannot recall receiving this letter. She may have received it or it may not have gotten to her due to a change in location of her offices. However, she found the letter, attached to a later mailing, in her files after the death of her husband.

On November 13, 2001, Mr. Holt sent a letter to Thomas Patton enclosing the same confirmation information from Security Life concerning the deletion of the rider. Plaintiff testified that she did not see this letter until after her husband's death. The letter contains a notation written in Mr. Patton's handwriting "Not in conformance w/agreement." The "illustration" attached to this letter shows the total death benefit of $1,875,000. Mr. Patton never contacted Mr. Holt to discuss whatever he believed might not be in "conformance." CMS received approximately $180,000 in commissions as a result of the Trust's insurance policy.

Thomas Patton died on June 14, 2002. Plaintiff filed a claim with Security Life to recover $2,500,0000 under the policy. On September 26, 2002, Security Life paid $1,875,000 plus interest to Plaintiff and denied the payment of benefits under the rider.

### B.  Contentions

Plaintiff contends that Security Life and CMS improperly terminated the rider on the Patton Trust insurance policy because she did not want the rider terminated. Although Plaintiff admits that she signed a form handed to her by her husband, she avers that Defendants should not have terminated the rider without receiving express permission from her. Plaintiff states that she never would have terminated the rider because she wanted the death benefit from the policy to be $2,500,000. Plaintiff further argues that CMS violated its fiduciary duties to her by suggesting to Thomas Patton that he should eliminate the rider.

Defendants respond that Plaintiff signed a document authorizing the termination of the rider, and thus they cannot be liable for the consequences of the termination. CMS further contends that it was not in a fiduciary relationship with Plaintiff. Even assuming that Plaintiff had not authorized the termination, both Defendants aver that Plaintiff ratified the termination when she and Thomas Patton received notification from both Security Life and CMS that the rider had been terminated and did nothing to attempt to alter that action. Finally, Defendants contend that Plaintiff's lawsuit should be voided because Plaintiff did not obtain written authority from her co-trustees to pursue a suit on behalf of the Patton Trust.

### II.  Discussion

6

The gravamen of Plaintiff's complaint is that the rider should not have been deleted without her knowledge and consent. However, Plaintiff's signature on the Client Services Application gave her express authorization to CMS and Security Life to delete the rider. The factual crux of the case is Thomas Patton handing a blank form to Marie Patton for her signature. Plaintiff admits that she signed the blank document and did not ask any questions because Mr. Patton told her it was to get some more information from the insurance company. Security Life and CMS had no place in that conversation. Plaintiff's complaint is with Mr. Patton's apparent decision to delete the rider. These basic facts control the court's discussion below.

### A.  Security Life of Denver Insurance Company

Plaintiff contends that Security Life breached its contract with her by failing to directly communicate with her, terminating the rider without a written request, terminating the rider effective June 21, 2001, and failing to pay Plaintiff the benefits of the rider. She also asserts that Security Life was the principal of CMS and therefore is liable for CMS's breach of duties.

Plaintiff admits it is her signature on the Client Services Application. That signature authorized Security Life to delete the rider, and therefore Plaintiff cannot sustain a breach of contract claim against Security Life for doing what she instructed them to do. Although Plaintiff signed the form in blank, she is still bound by the terms of the form. *See*, *e.g.*, *Southern Guarantee Insurance Co. v. Ragan Insurance Agency, Inc.*, 212 Ga. App. 690

7

(1994). The court agrees with Defendants that under these circumstances, there are no additional steps necessary. There is no requirement in the law or in the insurance policy itself that Security Life take the additional affirmative step of contacting Marie Patton to confirm her desire to terminate the rider. Her signature conveyed her desire.

Plaintiff next contends that the termination of the rider as of June 21, 2001, also constitutes a breach of contract by Security Life. The terms of the rider indicate that termination will take place on the "date you request." Plaintiff asserts this phrase is ambiguous because it could mean the date the form is submitted or at some date in the future that a policyholder selects. The court does not find that the phrase "date you request" allows for an interpretation which would have a policyholder choose some date in the future. Nothing in the contract points to this possibility. There is no date to fill in on the Client Services Application. The general provisions of the insurance policy indicate that changes in the policy become effective when they are received at the home office.

Even if the court were to find the phrase ambiguous, however, Plaintiff still could not succeed in a breach of contract claim. If ambiguous, the phrase would be construed in favor of the insured. *See Peachtree Casualty Ins. Co. v. Kim*, 236 Ga. App. 689 (1999). In this case, that means the later of the date Plaintiff requested, September 4, 2001, when the form was received at Security Life, or June 21, 2001, the previous anniversary date. This construction, however, would provide no remedy to Plaintiff, as Mr. Patton died on June 14, 2002, after either of those dates.

8

Instead, Plaintiff avers that her failure to select any particular date should void the entire Client Services Application form. The court, however, finds there is nothing in the policy that would indicate the court should void the request by Marie and Thomas Patton for that reason. The most logical assumption to be drawn from the lack of a date indicated by Marie Patton is *not* that she never intended for the termination she requested to be made, but that it would take place upon Security Life's receipt of the form, which is, in fact, what Mr. Holt (incorrectly) told Thomas Patton. Because Thomas Patton believed the termination would be effective immediately, the so-called "back-dating" of the termination has no effect here. As explained above, whether the termination was effective on September 4, 2001 or June 21, 2001 would not change the result here. For the foregoing reasons, the court GRANTS Security Life's motion for summary judgment [57-1].

### B. CMS

It is undisputed that CMS is not a party to the insurance contract and cannot be liable for breach of contract. Plaintiff contends, however, that CMS breached its fiduciary duty of utmost loyalty, good faith, and fair dealing by terminating the rider without her consent and by advising Thomas Patton to terminate the rider. Plaintiff also asserts that CMS breached its duty to exercise ordinary diligence and reasonable care in advising and communicating with Plaintiff and Mr. Patton. CMS responds that it was not acting in a fiduciary capacity with respect to the Security Life insurance policy.

AO 72A
(Rev.8/82)

The court need not resolve whether CMS was acting as a fiduciary because even if it were, Plaintiff has not presented sufficient evidence from which a jury could conclude that CMS had breached that duty.  *See generally* O.C.G.A. § 23-2-58; *Cochran v. Murrah*, 235 Ga. 304, 306 (1975).  With respect to CMS, Plaintiff seems to make a twofold argument:  (1) the advice CMS gave Thomas to delete the rider was poor, and (2) CMS should not have allowed Mr. Patton to delete the rider without explicit consent from Plaintiff who contends she never would have agreed to delete the rider because it would reduce the benefit at death.  As described above, because Marie Patton signed the form authorizing the termination of the rider, CMS had her consent for the termination and cannot be liable for any wrongful termination of the rider.

The court turns next to Plaintiff's contention that CMS breached its fiduciary duty in recommending to Mr. Patton that he eliminate the rider.  The court has only Mr. Holt's testimony to evidence the conversations that took place between Mr. Holt and Mr. Patton concerning what to do about the premiums in the face of declining interest rates.  Significantly, however, Plaintiff agrees that Mr. Patton wanted to eliminate the need to pay additional premiums.  Mr. Holt testified that Mr. Patton asked for various options of how to assure that no additional premiums would have to be paid.  Mr. Holt stated he presented some options and that Mr. Patton took a couple of days to deliberate and then decided to eliminate the rider.  The best reflection of Mr. Patton's beliefs is his August 21, 2001 letter to Mr. Holt.  There, he states clearly that he wants to cancel the rider.  Further, the letter establishes

Mr. Patton's understanding that as of August 21, 2001, the death benefit on the policy would be $1,875,000.

Plaintiff has proffered no evidence to show that advising Mr. Patton to eliminate the rider was a negligent or unreasonable action in the face of his desire to not pay any additional premiums. Plaintiff does testify that *her* only concern was maintaining the same level of coverage. *See* Patton Depo., at 118 ("my husband didn't want to pay any more premiums on the policy if he could avoid it," but "that part of it was not a concern to me. I just wanted the policy kept intact and the term rider."). The court understands that was her goal, but Plaintiff has not suggested any manner in which CMS could have advised the Pattons to achieve both Mr. Patton's goal of keeping the same premium level and Mrs. Patton's goal of assuring the same level of coverage. Again, Plaintiff seems to take issue with Mr. Patton's decision to eliminate the rider, but she cannot establish liability against CMS for their disagreement. The fact that Plaintiff did not care about the premiums and only wanted the $2,500,000 coverage does not make CMS's advice to Mr. Patton improper.

Secondary to this argument is Plaintiff's contention that somehow Mr. Patton's desires with respect to the policy were not carried out because the August 10, 2001 letter sent to Mr. Patton contained a blank Client Services Application and an "illustration" of the policy that still contained the $625,000 rider. She further asserts that Mr. Patton's copy of Mr. Holt's November 13, 2001 confirmation letter contains the notation "it does not conform with

11

agreement" in Mr. Patton's handwriting. This claim could be characterized as a "negligent procurement" claim. *See generally Wright Body Works, Inc. v. Columbus Interstate Insurance Agency*, 233 Ga. 268 (1974); *Atlanta Women's Club, Inc. v. Washburne*, 207 Ga. App. 3 (1992); *England v. Georgia-Florida Co.*, 198 Ga. App. 704 (1991).

As an initial matter, the court finds that these two facts are not sufficient to create a dispute as to whether Mr. Patton, through the assistance of CMS, did not receive the insurance coverage he desired. As the evidence adduced above shows, Mr. Patton went to CMS to determine how to maintain the same level of premiums in the face of dropping interest rates. CMS provided options and Mr. Patton eventually agreed to terminate the rider. The notation on the November 13, 2001 letter does not create a material dispute, particularly in light of the fact that Plaintiff does not dispute that Mr. Patton made no inquiries with CMS or Security Life after receiving the August 10 and August 13, 2001 letters.

Furthermore, even if the court were to conclude that CMS assisted Mr. Patton in structuring the insurance policy in a manner Mr. Patton did not desire, a negligent procurement claim fails if the insured had documents in his possession which readily demonstrated the coverage problem. *See*, *e.g.*, *Jim Anderson & Co. v. ParTraining Corp.*, 216 Ga. App. 344 (1995); *Atlanta Women's Club*, 207 Ga. App. at 4-5. Mr. Patton clearly received the documents noting that the rider was terminated and did not contact Mr. Holt or anyone else at CMS or Security Life to express his disagreement. Moreover, while Plaintiff

12

does not remember receiving or reading a letter confirming the deletion, she located the confirmation letter in her files after the death of her husband.

As in her breach of contract claim, Plaintiff also contends that CMS breached its fiduciary duty to her because Security Life set the effective date of the termination of the rider on June 21, 2001 and not the date on which the Client Services Application was signed. The only way Plaintiff might be able to assert such a claim against CMS is if CMS improperly informed the Pattons of the effective date of the rider termination and the inaccuracy of that statement caused some loss to Plaintiff. However, as the court explained above, Plaintiff cannot show she suffered any damage with respect to the effective date of the rider termination. Mr. Holt's testimony that he informed Mr. Patton that such a deletion would be effective immediately is not disputed. It is true that Mr. Holt's statement is not accurate. However, whether the rider was terminated on June 21, 2001 or September 4, 2001 has no effect on Plaintiff, as it was terminated prior to Mr. Patton's death. For the foregoing reasons, the court GRANTS CMS's motion for summary judgment [59-1].

Because the court holds that Security Life did not breach its contract with Plaintiff and CMS did not breach any fiduciary duty it might arguably have had with Plaintiff, the court need not decide whether Plaintiff filed this lawsuit without proper authorization from her co-trustees and DENIES AS MOOT Plaintiff's motion for leave to permit ratification, or in the alternative to join co-trustees [77-1].

13

Because the court grants Defendants' motions for summary judgment, the court DENIES Plaintiff's motion for summary judgment [60-1] and DENIES AS MOOT Defendants' motion to compel [48-1].

The court understands that Plaintiff has requested oral argument due to the "number and complexity of the inter-related legal and factual issues" raised by the parties.  The court, however, has based its ruling on the fact that Plaintiff signed an authorization for the deletion of the rider.  The intricacies of the manner in which the rider was paid for or other such issues are not dispositive to the ruling of the court and, in any event, support the assertion that Thomas Patton restructured the insurance policy in order to avoid paying additional premiums and sacrificed the rider in order to do so.  As such, the court does not find that oral argument would assist in the resolution of these matters.  Accordingly, the court DENIES Plaintiff's motion for oral argument [62-1] and DENIES Plaintiff's motion for oral argument [88-1].

## III.   Conclusion

The court DENIES AS MOOT Defendants' motion to compel [48-1]; GRANTS Defendant Security Life's motion for summary judgment [57-1]; GRANTS Defendant Capital Management System's motion for summary judgment [59-1]; DENIES Plaintiff's motion for summary judgment [60-1]; DENIES AS MOOT Plaintiff's motion for oral argument [62-1]; DENIES AS MOOT Plaintiff's motion for leave to permit ratification, or in the alternative to join co-trustees [77-1]; DENIES AS MOOT Plaintiff's motion for oral argument [88-1]; and GRANTS Plaintiff's motion for leave to file supplemental response [90-1].

The Clerk of the Court is DIRECTED to DISMISS WITH PREJUDICE Plaintiff's complaint.

**IT IS SO ORDERED** this 12th day of January 2006.

s/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE
